INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS LOCAL 44, Plaintiff,

v.

DIAL ONE SECURITY FENCE COMPANY, INC., Defendant.

No. C–1–88–0709.

United States District Court, S.D. Ohio, W.D.

Dec. 4, 1989.

Peter Fox, Cincinnati, Ohio, for plaintiff.

Michael Bergmann, Cincinnati, Ohio, for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on cross motions for summary judgment. The parties have submitted supporting and opposing memoranda, affidavits and a stipulation of facts (doc. nos. 7, 8, 9, 10, 11). In accordance with Federal Rule of Civil Pro-

cedure 52, the Court does hereby set forth it Findings of Fact, Opinion, and Conclusions of Law.

For the reasons stated below, Defendant's motion is GRANTED.

## FINDINGS OF FACT

The events leading up to the filing of this lawsuit began "around March" 1987, when the Defendant Dial One Security Fence Company Inc. (Security Fence), an Ohio Corporation in the fence repair business, was awarded a contract to replace certain fencing at the Zimmer Nuclear Power Plant. A few months later at a pre-job conference, Security Fence announced that it would employ two labor organizations to complete the fencing work for the Zimmer Nuclear Power Plant. Members of the Laborers International Union of the North America (local 265) (Laborers) were employed to tear down the old fence and erect a new one and members of the International Union of Operating Engineers (Engineers) were employed to operate the drilling machinery and other equipment necessary to erect the new fence.

As part of receiving the fencing contract, Security Fence agreed to be bound by the Southwestern Ohio Nuclear Power Plant Conversion Agreement (SONPPCA). The Plaintiff, The International Association of Bridge, Structural and Ornamental Iron Workers, Local 44 (Iron Workers), an unincorporated labor organization representing employees of the William H. Zimmer Generating Station Coal Conversion Project was one of the original signatories to the SONPPCA Agreement. The SONPPCA incorporates by reference, the Rules and Regulations of the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry Rules and Regulations (Rules and Regulations). Article I, section 1 of the Rules provide:

The Contractor who has the responsibility for the performance and installation shall make a specific assignment of the work which is included in his contract ... After work has been so assigned, such assignment will be maintained even though the assigning contractor is replaced and such work is subcontracted to another contractor.

The plaintiff Iron Workers disputed the Defendant Security Fence's assignment of the major portion of the fencing work to the Laborers, claiming that it was entitled to have its members perform half of that work under a previous assignment. After several attempts to resolve the dispute, the Iron Workers International sent notice of the fencing dispute to the Acting Administrator for the Plan for Settlement of Jurisdictional Disputes within the Construction Industry requesting that the Administrator:

... notify [the Defendant] that it is a violation of the Procedural Rules of the Plan for the Settlement of Jurisdictional Disputes for a contractor to change a work assignment ... [and] ... instruct [the Defendant] to revert to the "original assignment" which [included the] Iron Workers.

After giving both sides an opportunity to present their claims, the Administrator determined that the initial assignment of work had been to composite crews of Laborers and Ironworkers and "requested" that the Defendant adjust the dispute accordingly. Defendant Security Fence did not acquiesce to the Administrator's August 17, 1987 letter and continued to have its fencing work completed by the Laborers. Consequently, the plaintiff Iron Workers filed the Complaint which initiated this lawsuit.

On August 17, 1988 the plaintiff, filed this action for breach of a collective bargaining agreement under Section 301(a) of The Labor–Management Relations Act of 1947, 29 U.S.C. § 185(a).[1] In the Complaint, the Plaintiff requested that the

---

1. Section 301(a), 61 Stat. 156, 29 U.S.C. § 185(a) states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between

any such organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties.

Court "... [award the] Plaintiff Union and its members ... [monetary relief] ... for the damage caused by the Defendant's breach of contract." Plaintiff alleges a breach of contract when the Defendant altered the original assignment of fencing work by assigning its particular work to the Laborers rather than to a composite crew of Laborers and Ironworkers. The Administrator agreed with these allegations and "requested" the Defendant Security Fence to comply with its obligations as a replacement contractor under the SONPPCA.

## OPINION

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions and affidavits do not raise a genuine issue of material fact for trial. Federal Rule of Civil Procedure 56(c), *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original.)

The *Steelworkers Trilogy*[2], set out by the United States Supreme Court over twenty-five years ago, created a general preference for arbitration of disputes under a collective-bargaining agreement. As recently as 1986, the Court reaffirmed the validity, meaning and applicability of the *Trilogy* to determine arbitrability questions. *AT & T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 647, 106 S.Ct. 1415, 1417, 89 L.Ed.2d 648 (1986). In *AT & T*, the Court gleaned four basic principles from the *Trilogy:* (1) arbitration is a matter of contract and a party cannot be required to submit a dispute to arbitration unless he agreed to submit it; (2) the court, and not the arbitrator, determines whether the parties agreed to arbitrate; (3) in deciding if the parties agreed to submit a particular grievance to arbitration, the court shall not rule on the potential merits of the underlying claims; and, (4) where a contract contains an arbitration clause, there is a presumption of arbitrability—any doubts as to coverage should be resolved in favor of arbitration. *Id.* at 648–51, 106 S.Ct. at 2510–11.

According to the *Steelworkers Trilogy*, the Court, in deciding the arbitrability question, must ignore the potential merits of the underlying claims and must presume the parties agreed to arbitrate their grievance. In this case, the Rules agreed to by the parties specifically govern the arbitration process for jurisdictional disputes in the Construction Industry, and clearly, the parties had resort to arbitration at many steps in the process.[3]

Each party, however, claims that the other party had the final responsibility to arbitrate this dispute. The defendant contends that the Plaintiff was required to arbitrate or be "stuck with" whatever was the status quo when it abandoned the dispute resolution procedure. Article IX, section 4 of the Rules, however, provides that "any directive from the Administrator shall be complied with by the affected contractor unless, and within 24 hours following receipt of such directive, the contractor(s) notifies the Administrator that he elects not to comply with the directive, and requests that the jurisdictional dispute be processed through arbitration to a decision." The defendant received and ignored a directive requesting that they hire a crew, consisting at least in part, of members of the plaintiff's union. Although this fact seems to go in favor of the plaintiff's contention, the Court must not look at the merits of the underlying claims, until it has answered the arbitrability question.

---

2. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

3. In addition to the sections which will be examined, Article V, Section 3 gives the parties the discretion to arbitrate jurisdictional disputes by requesting "arbitration of the dispute within five (5) days, from the date the matter is referred by the Administrator...."

Even though Article IX, section 4 of the Rules appears to require the defendant to request arbitration as the "affected contractor" electing "not to comply with the directive," the Plaintiff still must follow the enforcement provision of the Rules to implement the Administrator's directive. The Enforcement Provision of the Rules, Article VII section 2, provides in relevant part that, "[i]f a party fails to accept and comply with a jurisdictional decision ... of the Administrator ... the Administrator may ... proceed in the same manner as the enforcement of an arbitrator's decision set forth in Section 2(f)-(i) of Article VI." According to those sections, the parties must resort to the jurisdiction of the United States District Court for the District of Columbia to enforce the arbitrator's decision.[4] Thus, the Administrator may seek to enforce her directive in the District Court of the District of Columbia. The Rules do not specifically grant the defendant the right to arbitrate this dispute in that court—the Administrator must assert that right for them—but the Rules do provide for arbitration. In light of the presumption of arbitrability asserted in the *Steelworkers Trilogy*, the Court will not circumvent the enforcement procedure agreed to in the Rules in order to get to the underlying merits of the Plaintiff's claim. It is apparent from the Rules, read in their entirety, that the parties agreed to put this dispute to arbitration. Consequently, the plaintiff may not seek enforcement of its claim in this Court.

### CONCLUSION OF LAW

For the foregoing reasons, the Defendant Security Fence's motion for summary judgment is hereby GRANTED.

IT IS SO ORDERED.

---

4. Article VI section (f) and (g) provide in relevant part as follows:

(f) The Arbitrator's decision may be enforced by the United States Court for the District of Columbia upon the filing of this agreement and all other relevant documents....

(g) All parties signatory or stipulated to this agreement, consent to the jurisdiction of the United States District Court for the District of Columbia for the purposes of enforcement of an arbitration decision rendered under this Article....